UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION FOR A SUSTAINABLE DELTA, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE, *et al.*,<br><br>Defendants. | 1:09-CV-480 OWW GSA<br><br>MEMORANDUM DECISION AND ORDER GRANTING FEDERAL DEFENDANTS' MOTION FOR SEVERENCE (DOC. 79) |

I. <u>INTRODUCTION</u>

Plaintiffs, Coalition for a Sustainable Delta and Kern County Water Agency, filed a second amended complaint ("SAC") on July 23, 2009, Doc. 75, advancing six groups of claims:

- Claims 1-5 against the U.S. Fish & Wildlife Service ("FWS"). These claims challenge FWS's December 15, 2008 Biological Opinion ("2008 BiOp") for Coordinated Operations of the Central Valley Project and State Water Project under the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA"). SAC ¶¶ 75-127. These claims were consolidated with

1

claims from related cases challenging the 2008 BiOp in the Delta Smelt Consolidated Cases, 1:09-cv-00407.

- Claims 6-7 against the U.S. Environmental Protection Agency ("EPA").  These claims allege that EPA registered 16 active pesticide ingredients under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") in violation of the ESA.  SAC ¶¶ 128-58.
- Claims 8-10 against the Maritime Administration ("MARAD").  These claims allege ESA violations relating to MARAD's alleged maintenance of National Defense Reserve Fleet vessels at Suisun Bay and the preparation of a management plan for disposal of non-retention vessels.  SAC ¶¶ 155-76.
- Claims 11-13 against FWS.  These claims allege ESA violations relating to FWS's provision of funding to the California Department of Fish and Game under the Federal Aid in Sport Fish Restoration Act.  SAC ¶¶ 177-95
- Claims 14-16 against the Federal Emergency Management Agency ("FEMA").  These claims allege ESA violations relating to FEMA's administration of the National Flood Insurance Program in the Sacramento-San Joaquin Delta.  SAC ¶¶ 196-221.
- Claims 17-18 against the U.S. Army Corps of Engineers

2

("Corps") and FWS.  These claims allege ESA and APA violations by the Corps and FWS relating dredging activities at the Port of Stockton.  SAC ¶¶ 222-40.

On August 14, 2009, Federal Defendants moved to sever and dismiss, without prejudice, Claims 6-7 against EPA, Claims 8-10 against MARAD, and claims 14-16 against FEMA from the remaining claims against FWS and the Corps pursuant to Fed. R. Civ. P. 20(a) and 21.  Plaintiffs opposed on September 14, 2009, Doc. 87, and Defendants replied on September 25, 2009, Doc. 91.

The Corps and FWS separately moved to dismiss Claims 11-13 and 17-18 for lack of subject matter jurisdiction Doc. 82.  That motion was set for hearing on November 23, 2009.  However, on October 27, 2009, the parties stipulated to the dismissal of Claims 11-13 and 17-18.  Doc. 96.  FWS and the Corps also withdrew their motion to dismiss Claims 11-13 and 17-18, as those claims are no longer part of this litigation. *See* Doc. 97.  The parties stipulated to the dismissal of Plaintiffs' claims against EPA in Counts 6-7 of the SAC relating to 13 of the 16 challenged pesticide registration decisions, as well as part of Plaintiffs' claims relating to one additional pesticide registration decision.  *See* Doc. 96.

Plaintiffs' lawsuit now consists of the following

3

claims:

- Claims 1-5 challenging FWS's 2008 BiOp (SAC ¶¶ 75-127).  These claims have been consolidated with related claims in the Delta Smelt Consolidated Cases, 1:09-cv-00407.

- Claims 6-7 challenging EPA's registration of three active pesticide ingredients (propanil, SAC ¶148; cypermethrin, SAC ¶152; and permethrin based on the alleged effects on listed salmonids only, SAC ¶153). These claims are related to another pending lawsuit, *Center for Biological Diversity v. EPA*, 3:07-cv-02794 (N.D. Cal. filed May 30, 2007)("CBD").  That case involves a challenge to EPA's registration or re-registration of 74 pesticide active ingredients, and their alleged effects on eleven listed species, including delta smelt.

- Claims 8-10 against MARAD (SAC ¶¶ 155-76).  These claims are related to another pending case, *Arc Ecology v. MARAD*, 2:07-cv-02320 GEB GGH (E.D. Cal. filed Oct. 29, 2007).  *Arc Ecology* is a challenge to MARAD's maintenance and disposal plan for the non-retention of vessels in Suisun Bay under the National Environmental Policy Act ("NEPA"), the Resource Conservation and Recovery Act ("RCRA"), California's

4

Hazardous Waste Control Law, and the Clean Water Act

("CWA"), <u>but not the ESA</u>.

• Claims 14-16 against FEMA (SAC ¶¶ 196-221).

*See* Doc. 96.

## II. <u>STANDARD OF REVIEW</u>

The joinder of claims against multiple defendants in

a single action is governed by Federal Rule of Civil

Procedure 20(a), which provides that "persons ... may be

joined in one action as defendants if":

> (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with
> respect to or arising out of the same
> transaction, occurrence, or series of
> transactions or occurrences; <u>and</u>

> (B) any question of law or fact common to all
> defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2)(emphasis added).  The permissive

joinder rule "is to be construed liberally in order to

promote trial convenience and to expedite the final

determination of disputes, thereby preventing multiple

lawsuits."  *League to Save Lake Tahoe v. Tahoe Reg'l*

*Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1997).  The

purpose of Rule 20(a) is to address the "broadest

possible scope of action consistent with fairness to the

parties; joinder of claims, parties and remedies is

strongly encouraged."  *United Mine Workers of Am. v.*

*Gibbs*, 383 U.S. 715, 724 (1966).

5

"The first of these, the common question test, is usually easy to satisfy." *Bridgepoat Music, Inc. v. 11C Music*, 202 F.R.D. 229, 231 (M.D. Tenn. 2001)(citing 4 James Wm. Moore et al., Moore's Federal Practice, ¶20.04 (3d ed. 1999)).  "The transactional test, however, is more forbidding.  It requires that, to be joined, parties must assert rights, or have rights asserted against them, that arise from related activities-a transaction or an occurrence or a series thereof." *Id.* (internal citations omitted).  Because this test "does not lend itself to bright line rules, it generally requires a case by case analysis." *Id.*

If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).  In such a case the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs "against some or all of the present defendants based on the claims or claims attempted to be set forth in the present complaint."  *Id.*

6

### III. __ANALYSIS.__

Federal Defendants move to sever from the 2008 OCAP BiOp claims (Claims 1-5), the remaining portions of Claims 6 and 7 against the EPA's registration of certain pesticide active ingredients, Claims 8-10 against MARAD concerning maintenance and disposal of vessels at Suisun Bay, and Claims 14-16 challenging FEMA's administration of the National Flood Insurance Program in the Delta. Doc. 79. Federal Defendants argue (1) that these claims do not arise out of the same transaction or occurrence as the BiOp claims, (2) joinder does not promote convenience or efficiency, and (3) the misjoined claims should be dismissed without prejudice. *Id*.

At the heart of Plaintiffs' argument for joinder is the undisputed proposition that a "long list of stressors" affect the delta smelt. See 2008 Smelt BiOp at 189, 203. Plaintiffs maintain, therefore, that all of the claims joined in this suit are "logically related" because they "all relate[] to the decline of the delta smelt and harm to its designated critical habitat, all involve violations of the [ESA], and share questions of both law and fact in common, and all would result in consultation with [FWS]," if resolved in Plaintiffs' favor. Doc. 87 at 2.

7

**A.   Do All of the Claims Arise Out of the Same Transaction Or Occurrence?**

The first requirement of permissive joinder is that any joined claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 21(a)(2).   The Ninth Circuit defines the term "transaction or occurrence" to mean "similarity in the factual background of a claim." *Bautista v. Los Angeles County*, 216 F.3d 837, 842-43 (9th Cir. 2000)(citing *Coughlin*, 130 F.3d at 1350).   Claims that "'arise out of a systematic pattern of events' arise from the same transaction or occurrence." *Id.*   Plaintiffs assert that the various claims against Federal Defendants arise out of the same transaction or occurrence because "the thrust of [each] claim ... is that each of the federal agency's actions or approvals has contributed to the decline of the delta smelt."   Doc. 87 at 2.

The caselaw provides some guidance.   In *Coughlin*, for example, 49 plaintiffs alleged that the Immigration and Naturalization Service ("INS") unreasonably delayed plaintiffs' separate applications and petitions in violation of the APA and the U.S. Constitution.   130 F.3d at 1349.   The Ninth Circuit affirmed the district court's conclusion that the claims did not satisfy the "same transaction" requirement:

>The first prong, the "same transaction" requirement, refers to similarity in the factual background of a claim. In this case, the basic connection among all the claims is the alleged procedural problem of delay. However, the mere allegation of general delay is not enough to create a common transaction or occurrence. Each Plaintiff has waited a different length of time, suffering a different duration of alleged delay. Furthermore, the delay is disputed in some instances and varies from case to case. And, most importantly, there may be numerous reasons for the alleged delay. Therefore, the existence of a common allegation of delay, in and of itself, does not suffice to create a common transaction or occurrence.

*Id.* at 1350.

In contrast, in *Bautista*, where each member of a large group of plaintiffs lost his or her job at the same time due to the same merger, the claims arose from the same transaction or occurrence; i.e., the merger that caused jobs to be lost.  216 F.3d at 843.  Similarly, in *Mosley v. Gen. Motors Corp*., 497 F.2d 1330, 1333 (8th Cir. 1974), on which Plaintiffs rely, claims brought by ten plaintiffs alleging they had been injured by a company-wide policy designed to discriminate against African Americans "ar[o]se out of the same series of transactions or occurrences," a racially discriminatory workplace.  *Id*. at 1333-34.[1]

---

[1] Plaintiffs emphasize that *Mosely* applied a "logical relationship" test to Rule 20(a) permissive joinder. *Mosely*, an Eighth Circuit case, looked to Supreme Court's interpretation of "transaction or occurrence" in the related context of Rule 13 (counterclaims).  *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610 (1926), held that "'Transaction' is a word of flexible meaning.  It may

1    Federal Defendants' also rely on *Golden Scorpio Corp.*

2  *v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1285

3  (D. Ariz. 2009), which held that claims alleging multiple

4  defendants infringed upon a trademark were improperly

5  joined under Rule 20(a) because the circumstances of each

6  infringement were different.  Despite the fact that the

7  same trademark was involved, misjoinder existed because

8  the claims of unlawful activity against one defendant

9  were "separate and distinct from the allegedly improper

10 acts of any of the other defendants."  *Id*.  Similarly, in

11 *Movie Systems Inc. v. Abel*, 99 F.R.D. 129 (D.C. Minn.

12 1983), a distributor of television programs filed 18

13 similarly worded complaints, each naming approximately

14 100 defendants, for a total of almost 1,800 defendants

15 accused of pirating its television programming.  The

16 claims were severed because "[t]here is no claim that the

17 alleged pirating ... was done other than independently by

18 each of the 1795 defendants."  *Id*. at 130.

19    Plaintiffs attempt to distinguish *Golden Scorpio*,

20 *Movie Systems*, and a similar unpublished case, *In Re*

_____

comprehend a series of many occurrences, depending not so
much upon the immediateness of their connection as upon
their logical relationship."  *Mosley* reasoned that "[t]he
analogous interpretation of the terms as used in Rule 20
would permit all reasonably related claims for relief by
or against different parties to be tried in a single
proceeding."  *Id*. at 1333.  Plaintiffs point to no
analogous cases that have found any "logical" or
"reasonable" relationship between claims such as those in
the SAC.

*DIRECTV, Inc.,* 2004 WL 2645971 (N.D. Cal. July 6, 2004), on the ground that these claims concerned torts or alleged violations of statutory rights "such that only concerted action by Defendants ... would satisfy the logical relation standard." *Id*. at 16.  In contrast, Plaintiffs argue, the SAC alleges "each Defendant's action is contributing to the decline of the delta smelt and the ecological health of the Delta itself."

Plaintiffs' suggestion is that claims may meet the "transaction or occurrence" requirement merely because each, distinct federal action adversely impacts the delta smelt.  As in *Coughlin*, where a "basic connection" between the claims was insufficient, each allegedly unlawful agency action affecting the smelt is largely distinct from the others.  Claims 1-5 concern FWS's evaluation of the coordinated operation of the Central Valley Project ("CVP") and State Water Project ("SWP"), one of the most complex water storage and delivery systems in the world.

Claims 6-7 challenge the registration of pesticides for use in the Delta region, each of which has complex chemical interactions with the environment.  The effect of pesticides used in the Delta has no relationship to coordinated Project operations.  It may have a negative

**11**

effect on the smelt, but whether this was inadequately
considered in the BiOp (or in the context of MARAD or
FEMA's challenged decisions) is entirely determinable
without examining the efficacy of the registration.

Claims 8-10 address the storage and disposal of ships
within the Delta, a type of agency action claimed to
result in discharges of toxic rust, paint, and other
substances.  Another case is addressing the lawfulness of
the ship retentions and disposals.  Resolution of the
Consolidated Delta Smelt Cases does not depend on the
lawfulness of EPA's, FEMA's, or MARAD's actions.  Rather,
it depends on whether FWS failed to evaluate the effects
of such actions on the smelt as related to the Projects'
coordinated operations, if such evidence exists in the
Smelt BiOp administrative record.

Claims 14-16 concern administration of the National
Flood Insurance Program, which implicates land use and
development issues in and around the Delta, yet another,
entirely different subject matter from Project
operations.  Although these claims share the "basic
connection" that each federal action occurs in the delta
watershed and causes adverse impacts to the delta smelt
in some way, the agency actions themselves are distinct

from coordinated Project operations.[2]  Such land use and development effects can be considered without deciding whether the actions can lawfully continue.

Plaintiffs suggest an alternative reason why permissive joinder is appropriate here, arguing that FWS "as the common consulting agency" has an obligation to "address the underlying nexus of stressors on the Delta ecosystem."  It is undisputed that a wide variety of "stressors" affect the delta smelt and its critical habitat.  For the purposes of this motion, it is presumed true that each of the challenged government actions (i.e., EPA's pesticide approvals, MARAD's maintenance and disposal of vessels at Suisun Bay, and FEMA's administration of the National Flood Insurance Program in the Delta), operate as stressors to the delta smelt.

Plaintiffs are correct that, under the ESA, Federal Defendants are obligated to consider the effects of any proposed federal action in light of the environmental baseline, 16 U.S.C. § 1536; 50 C.F.R. § 402.02, and that any past and current federal actions form part of the

---

[2] Plaintiffs attempt to distinguish *Coughlin* on the ground that joinder was not permitted there because the <u>general</u> allegations of delay were insufficient.  Here, in contrast, the SAC <u>specifically</u> alleges how each challenged federal action contributes to the decline of the smelt.  But, specificity was not the central issue in Coughlin.  Rather, the focus was on the differing circumstances underlying each alleged defendant's situation.  *See* 130 F.3d at 1350.

environmental baseline, 50 C.F.R. § 402.02 ("The environmental baseline includes the past and present impacts of all Federal, State, or private actions and other human activities in the action area."). FWS must evaluate individual federal action under the ESA in light of the environmental baseline, which analysis must consider all stressors impacting the delta smelt.  It is also true that a body of scientific literature points toward a "new paradigm" in which the Delta should be understood and managed as an integrated system.

Undoubtedly, in understanding and evaluating each individual activity, all others must be considered. Nevertheless, each activity is separate and distinct, and plaintiffs point to no statute, regulation, guidance, or other source of legal authority that required FWS to do more than consider the environmental baseline and all then-existing conditions that jeopardized the delta smelt and adversely affected its critical habitat.  FWS, as the consulting agency under the ESA, does not "manage" the complained-of activities.  The ESA only requires that FWS evaluate the impacts on listed species of the each particular federal action in light of other, known stressors.  Each activity is a separate transaction or occurrence that must be evaluated in light of the others.

14

The district court's holding in *Preserve Our Island v. U.S. Army Corps of Eng'rs*, 2009 WL 2511953 (W.D. Wash. Aug. 13, 2009), does not require FWS to manage all stressors on a particular species in a coordinated manner.   Plaintiffs in *Preserve Our Island* alleged that the issuance of a permit by the Corps for the construction of a facility on the shore of an island in Puget Sound violated NEPA and the ESA.   After finding the ESA and NEPA reviews of the project insufficient on numerous grounds, the district court concluded:

> Which raindrop caused the flood?" With those closing words (and due credit to the author), plaintiffs at oral argument expressed the central issue here. No single project or human activity has caused the depletion of the salmon runs, the near-extinction of the SR Orca, or the general degradation of the marine environment of Puget Sound. Yet every project has the potential to incrementally increase the burden upon the species and the Sound. Human development will always have some impact on the surrounding environment. The Court fully recognizes the desirability and economic necessity of industrial progress in order for a community to flourish. However, under the National Environmental Policy Act and the Endangered Species Act, it is the federal agencies' obligation to ensure that this progress does not cause irreversible harm to the environment. Thus, NEPA provides a mandate to the agencies "to consider every significant aspect of the environmental impact of a proposed action", and "to inform the public that it has indeed considered environmental concerns in its decisionmaking process." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983). It is then this Court's role to ensure that the agencies have taken that

15

1
2
3
4

       requisite "hard look" at the environmental
       consequences for the proposed project. *Metcalf
       v. Daley*, 214 F.3d [1135,] 1141 [(9th Cir.
       2000)]. Having reviewed the record, the Court
       finds that hard look at environmental
       consequences lacking.

5   Id. at *20.

6       This general language from *Preserve Our Island* does

7   not establish the review standard Plaintiffs seek.

8   *Preserve Our Island* did not address the issue of joinder,

9   nor does it suggest that the hard look at the agency

10  action subsumes other federal actions that impact the

11  species, but are not the subject of the BiOp.  Likewise,

12  *Preserve Our Island* did not involve multiple federal

13  actions or address any other issue presented here.  What

14  *Preserve Our Island* stands for is that FWS must take a

15  hard look at the coordinated CVP-SWP operations changes

16  and their impact on listed species.  The additional

17  complained of actions may well be within the

18  environmental baseline and subject to close scrutiny and

19  analysis, but requests for relief regarding these other

20  actions are not reasonably part of the relief sought in

21  the Consolidated Delta Smelt Cases, to invalidate the

22  BiOp and to cause it to be reissued by FWS.

23      The claims against EPA, MARAD, and FEMA are not part

24  of the same transaction or occurrence as the coordinated

25  Project operations in the Consolidated Delta Smelt Cases.

16

1   Each action agency is separately charged with a duty to

2   ensure its own actions do not jeopardize the delta smelt

3   and/or its critical habitat.  Other than requiring

4   evaluation of impacts of other federal agency action in

5   defining an accurate and comprehensive environmental

6   baseline, the law does not require joinder in the same

7   case of all federal actions that operate as stressors

8   upon the smelt to decide if such actions are unlawful or

9   should be abated.

10

11  **B.   Do the Claims Involve the Same Questions of Law or**

12  **Fact?**

13       "[T]he mere fact that all Plaintiffs' claims arise

14  under the same general law does not necessarily establish

15  a common question of law or fact."  *Coughlin*, 130 F.3d

16  1351.  Where claims require significant "individualized

17  attention," they do not involve "common questions of law

18  or fact."  *Id*.  Each set of claims in the SAC alleges

19  unrelated actions by different agencies that have

20  different effects:  pesticides, vessel storage, flood

21  insurance, etc.  Although the claims share some factual

22  connection in that each federal action is alleged to have

23  contributed to the decline of the delta smelt,

24  determining and potentially remedying the lawfulness of

25  each agency action will require review of vastly

26  divergent information and consequences, which do no have

27

28
                        17

common factual or legal issues.  The claims do not

involve common questions of law or fact.

## C.   Would Severance Prejudice a Substantial Right?

Where the test for permissive joinder is not
satisfied, a court may, in its discretion, sever the
misjoined parties as long as no substantial right would
be prejudiced by the severance.  *See* Fed. R. Civ. P. 21;
*Coughlin*, 130 F.3d at 1350.  Plaintiffs do not have a
right to force the Federal Defendants to take action
against all the alleged stressors on the Delta smelt in a
single lawsuit, given the resulting complexity,
dissimilarities, and delay that will attend such
litigation.  Plaintiffs have not established that
severance will prejudice any of their substantial rights
as each alleged stressor can be examined in the
Consolidated Delta Smelt Cases to determine their
separate and combined effect on the species and its
habitat, if the evidence to do so is in the record.
Continued joinder of other agency action claims may
unduly complicate and delay the smelt cases, which the
parties have sought to expedite.

## D.   Would Joinder Serve the Purposes of Convenience and/or Efficiency?

Maintaining all of the alleged claims in one lawsuit

will be unwieldy.  The docket in an APA or ESA lawsuit challenging a single agency action is always complex, sometimes consists of hundreds, if not thousands of entries.  Joining four separate, and different, agency actions in a single case will make it unduly burdensome to keep track of relevant filings, motions, and deadlines.  Even if these claims had met the test for permissive joinder, keeping the cases separate is preferable for effective case management and administrative efficiency.

Plaintiffs are incorrect that all four claims will involve a single administrative record and/or related discovery.  As a general rule, judicial review of agency action is limited to the "whole record or those of it cited by a party."  5 U.S.C. § 706.[3]  Each separate agency action will have a separate administrative record. Although there may be some overlap if similar information about the smelt was before each agency at the time of its decision (or non-decision), each record will include extensive, unique, unrelated information about the

_____

[3] *Washington Toxics Coal. v. EPA*, 413 F.3d 1024, 1034 (9th Cir. 2005), held that the APA's "final agency action" requirement did not apply to cases brought under the ESA's citizen suit provision because that provision contains its own waiver of sovereign immunity. *Washington Toxics* does not address the scope and standard of review, which is indisputably governed by the APA. *Tribal Village of Akutan v. Hodel*, 869 F.2d 1185, 1193 (9th Cir. 1988) .

different agency action in question.  Moreover, if discovery is available at all, it is unlikely to be extensive, as extra-record evidence is discouraged in administrative review cases. *Southwest Center for Biological Diversity v. United States Forest Service*, 100 F.3d 1443, 1450 (9th Cir. 1996).

**E.    Should the Misjoined Claims Be Severed and Allowed to Proceed Separately or Should they be Dismissed Without Prejudice?**

Rule 21(a) provides that misjoinder is "not a ground for dismissing an action."  Fed. R. Civ. P. 21.  "On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party." *Id.*; *see also DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (upon a finding of misjoinder, a court "has two remedial options: (1) misjoined parties may be dropped 'on such terms as are just'; or (2) any claims against misjoined parties 'may be severed and proceeded with separately.").

Here, Federal Defendants suggest that the appropriate course of action is dismissal of all claims against all Defendants, except the first one named in the caption to the Complaint.  This is an accepted practice under Rule 21.  *See DirecTV v. Armellino*, 216 F.R.D. 240, 241 (E.D.N.Y. 2003)(dismissing without prejudice all claims

against all but the first named defendant).   Federal Defendants argue dismissal without prejudice is appropriate here "because this case is at the very early stages of litigation and no substantive prejudice would result...."   Doc. 79 at 10.

Here, dismissal would be wasteful of the parties' and judicial resources.   The SAC has been filed and served, and judicial resources have been invested into reviewing the claims against all defendants.   It is more reasonable to permit each set of claims to proceed as a separate lawsuit, all of which can be managed in a coordinated proceeding.   The claims against FWS regarding the OCAP BiOp have already been consolidated with the other delta smelt cases.   The claims against EPA, MARAD, and FEMA shall be severed and assigned three new case numbers. Because there are linkages between the claims, the three new cases will be coordinated for case management purposes and a single scheduling conference will be held in all three cases with a view to achieving judicial efficiency and economy.

Plaintiffs' request to delay decision on severance until there is further factual development in these cases is DENIED, as doing so will permit the filing of multiple administrative records under one docket and trigger

1 | related administrative burdens.

2

3 | IV. <u>CONCLUSION</u>

4 | For the reasons set forth above, Federal Defendants'

5 | motion to sever is GRANTED.  The claims against FWS

6 | regarding the OCAP BiOp shall be fully consolidated with

7 | the other delta smelt cases for all purposes including

8 | trial, while the claims against EPA, MARAD, and FEMA will

9 | be severed and assigned three new, consecutive case

10 | numbers.  The three new cases will be coordinated for

11 | case management purposes, and the captions shall indicate

12 | that each is coordinated with the others.

13

14

15 | SO ORDERED
   | Dated:  November 17, 2009
16

17 | /s/ Oliver W. Wanger
   | Oliver W. Wanger
18 | United States District Judge

19

20

21

22

23

24

25

26

27

28